The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JOSEPH M. FREEMAN,<br><br>Defendant. | NO. CR23-008-JLR<br><br>UNITED STATES' SENTENCING MEMORANDUM |

Joseph M. Freeman sells tickets for large events through his company Special Delivery LLC, which has no employees other than himself. The onset of the COVID-19 pandemic and absence of large public gatherings in 2020 meant that his revenue stream vanished, and he was in a difficult financial situation. Instead of lawfully seeking the government benefits he was entitled to receive, Freeman and his co-conspirator grossly exaggerated the revenue and payroll numbers for Special Delivery LLC and New Jack Trucking LLC, a company he registered in 2019, and submitted fictitious financial and tax documents to fraudulently obtain $646,000 in Paycheck Protection Program loan proceeds.

The United States recommends that the Court sentence Freeman to 18 months of imprisonment for conspiracy to commit theft of government funds. Because the

United States' Sentencing Memorandum
*United States v. Freeman* / CR23-0008-JLR - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

government was able to seize $219,333.12 of the fraudulent proceeds, the Court should further order Freeman to pay restitution in the amount of $426,666.88.

## I. BACKGROUND

### A. The COVID-19 Pandemic and Small Business Assistance

In March 2020, following presidential declarations of a nationwide emergency and major disasters in every state, the federal government enacted measures to mitigate the devasting economic impact the COVID-19 pandemic was exacting on American workers and businesses. In fact, a survey in April 2020 showed that 43 percent of small businesses in the nation had at least temporarily closed, which was unprecedented in our nation's history and a far more severe economic impact than the 1918 influenza.[1]

Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which authorized $2.2 trillion in assistance and, *inter alia*, created the Paycheck Protection Program (PPP). PPP was a COVID-19 pandemic relief program administered by the Small Business Administration (SBA) that provided forgivable loans to small businesses for job retention and certain other expenses. PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA. In the event of default, SBA will fully satisfy the lender for any balance remaining on the loan. Further, SBA forgave any loan up to 100 percent if the borrower used the funds for specified purposes. The initial $349 billion funding for PPP from CARES Act was exhausted by April 16, 2020, and Congress authorized another $320 billion to extend the program through August 8, 2020.

---

[1] Alexander Bartik, et al., "How Are Small Businesses Adjusting to COVID-19? Early Evidence From a Survey," *Nat'l Bureau of Economic Research* (Apr. 2020), at 3, 8, *available at* https://www.nber.org/system/files/working_papers/w26989/w26989.pdf.

United States' Sentencing Memorandum
*United States v. Freeman* / CR23-0008-JLR - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation on February 15, 2020, and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

The SBA also administers the EIDL Program, which provides low-interest financing to small businesses and non-profit organizations in regions affected by declared disasters. CARES Act authorized SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the pandemic. The CARES Act and subsequent legislation also authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. EIDL Advances did not have to be repaid. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

A qualifying business applying for an EIDL must submit an application online to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge.

**B.  Freeman Stole Funds Intended for Other Small Businesses Suffering from the Economic Impact of the COVID-19 Pandemic.**

Before Freeman and his associate submitted the fraudulent PPP applications in the charged offense, Freeman first attempted to obtain EIDLs for each entity. On March 30, 2020, the SBA received an EIDL application for Special Delivery. The application stated

United States' Sentencing Memorandum
*United States v. Freeman* / CR23-0008-JLR - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Special Delivery's 2019 gross receipts were $160,000, cost of goods were $70,000, and monthly sales were $13,333. On April 8, 2020, SBA approved the application for a $15,000 EIDL. The same day, Freeman, using his true Social Security number and phone number ending in -7509, contacted SBA for assistance for completing his application, however, he never submitted the final package. On April 10, 2020, Freeman received an EIDL Advance of $1,000.

The next day, Freeman submitted an EIDL application for New Jack Trucking, which Freeman formed and registered with Washington state in 2019 to provide post-construction clean-up and trucking services. *See* PSR at ¶ 67. However, New Jack Trucking's bank statements from January 1, 2019 through September 30, 2020, showed $105,997 in deposits from entities in the ticketing industry, such as StubHub, Ticketmaster, Seat Geek, and Gametime Orders.

New Jack Trucking's EIDL application stated that its 2019 revenue and cost of goods were $0 and that it incurred office rent and cable expenses of $7,812. The application used the same -7509 phone number that was on the Special Delivery EIDL application. The following day, on April 12, 2020, Freeman received an EIDL Advance of $1,000 for New Jack Trucking, but the application was subsequently declined because the entity did not meet revenue requirements for the program.

About one month later, on May 11, 2020, Special Delivery submitted a PPP application representing that it had an average monthly payroll of $200,000 and 15 employees, which would entitle it to a forgivable $500,000 PPP loan. *Id.* at ¶ 13. The application required the applicant to certify that it "had employees for whom it paid salaries and payroll taxes or paid independent contractors." *Id.* at ¶ 13.

In support of the application, Freeman and his associate submitted a fake IRS Form 940 that falsely represented that Special Delivery had paid wages totaling $2.4 million in 2019. *Id.* at ¶ 14. The supporting documents also included a fake IRS Form 941 that falsely claimed that Special Delivery had paid wages totaling $600,000 to 15 employees in the first quarter of 2020. *Id.* These documents were required because the primary purpose of PPP was to keep American workers employed.

United States' Sentencing Memorandum
*United States v. Freeman* / CR23-0008-JLR - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On May 19, 2020, Freeman and his associate submitted the signed loan note for $500,000:

> UNDERSIGNED BORROWER ACKNOWLEDGES THAT HE/SHE IS THE <u>AUTHORIZED REPRESENTATIVE OF THE APPLICANT</u> AND HAVING READ ALL THE PROVISIONS OF THIS LOAN DOCUMENT AND AGREES TO ITS TERMS
>
> BY SIGNING THE BORROWER AGREES THAT ALL INFORMATION PROVIDED IN THIS APPLICATION AND ALL SUPPORTING DOCUMENTS AND FORMS TO OBTAIN THIS LOAN ARE TRUE AND ACCURATE IN ALL MATERIAL RESPECTS AND THAT ANY KNOWN FALSE STATEMENTS ARE PUNISHABLE BY FINE, IMPRISONMENT OR BOTH.
>
> IN WITNESS WHEREOF, the Borrower has executed and accepted this Note as of 5/19/2020.
>
> Name: Joseph Freeman
> Signature: *Joseph Freeman* (DocuSigned by: 4DE87026C5CC453...)
> Title: Owner

On May 20, 2020, the $500,000 proceeds were deposited into Special Delivery's bank account, and less than a week later, Freeman created a payroll account with a payroll processing company to create the illusion that the funds were being used for authorized purposes that would warrant loan forgiveness. *Id.* at ¶ 19. But the payroll was a farce because Special Delivery had no employees other than Freeman. The employee listing on the payroll account included Freeman, his girlfriend, and other individuals who were not employees but, when interviewed by federal investigators, claimed Freeman owed them money.

Between May 28, 2020 and June 23, 2020, Freeman withdrew over $75,000 of the Special Delivery loan proceeds as cash. Using the payroll service, Freeman made payments to 10 individuals totaling approximately $175,000, including approximately $20,000 to himself and over $16,000 to his girlfriend. In July, Freeman transferred $39,000 to another Special Delivery bank account. The subsequent debit charges for that account appear to be for travel and other personal expenses, including a $356.34 purchase from Nike on July 21, 2020.

About a week after Freeman received $500,000 he knew he was not entitled to have, he and his co-conspirator submitted a PPP application for New Jack Trucking.

United States' Sentencing Memorandum
*United States v. Freeman* / CR23-0008-JLR - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Even though the New Jack Trucking EIDL application in April claimed no revenue or cost of goods for the entity in 2019, the PPP application claimed an average monthly payroll of $58,400 and 10 employees. *Id.* at ¶ 16. The application also falsely claimed that New Jack Trucking "was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors." *Id.* After a PPP loan for $146,000 was approved, on June 15, 2020, Freeman and his co-conspirator signed loan documents certifying that everything in the application and supporting documents was correct. *Id.* In fact, Freeman and his co-conspirator submitted four fake IRS Form 941s that claimed New Jack Trucking paid $175,200 in wages to 10 employees in 2019 and a fake bank statement that inflated the balance of New Jack Trucking's bank account to be $10,607.43 on February 29, 2020. *Id.* at ¶ 17. In reality, the account's balance on February 29, 2020 was $78.10.

On June 16, 2020, Freeman's New Jack Trucking bank account received the PPP loan proceeds of $146,000. Subsequent debits to the account included hotel and air travel expenses, purchases from ticketing platforms and sports venues, and cash withdrawals. None of the withdrawals were made to payroll.

## II.   PROCEDURAL HISTORY

On January 24, 2023, the government filed a one-count Information charging Freeman with conspiracy to commit theft of government funds. Dkt. 1. On February 23, 2023, Freeman waived his right to be charged by Indictment and pled guilty to the charged offense in the Information. Dkt. 7-11.

## III.   SENTENCING GUIDELINES CALCULATIONS

The United States agrees with the Probation Office on the Sentencing Guidelines calculations and has no objections to the facts contained in the PSR.
//
//

United States' Sentencing Memorandum
*United States v. Freeman* / CR23-0008-JLR - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The following calculation applies for the charged offense:

| Item | Guideline | Adjustment |
|---|---|---|
| Base Offense | 2B1.1(a)(2) | +6 |
| Intended Loss in Excess of $550,000 | 2B1.1(b)(1)(H) | +14 |
| Sophisticated Means | 2B1.1(b)(10) | +2 |
| Acceptance | 3E1.1 | -3 |
| **Total** | | **19** |

*See* PSR at ¶¶ 27-35.

The defendant's criminal history category is I. *Id.* at ¶ 42. The resulting Guidelines range is 30 to 37 months.

## IV.   SENTENCING RECOMMENDATION

The United States recommends that the Court impose a term of imprisonment of 18 months, followed by a three-year term of supervised release with the standard and special conditions proposed by Probation. The government further recommends that the Court order the defendant to pay restitution in the amount of $426,666.88, as he has agreed to do in paragraph 12 of the Plea Agreement. *See* Dkt. 10 at 10.

This recommendation is appropriate given "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and to ensure adequate general deterrence. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B).

**Nature and Circumstances.** The government's recommendation recognizes the mitigating circumstances in this case, particularly the fact that Freeman was a small business owner who acutely felt the economic impact of the pandemic. Unfortunately,

United States' Sentencing Memorandum
*United States v. Freeman* / CR23-0008-JLR - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

millions of small business owners in America were similarly situated.[2]  And even though Freeman personally understood their suffering, he still stole money that was intended for other small business owners.

During major disasters and times of crisis, it is particularly important for the government to be able to disburse aid quickly to victims to mitigate the impact of the crisis.  When individuals exploit these vulnerable periods, they not only drain finite monetary resources, they also burden limited infrastructure resources.  For example, it was widely reported that the large volume of PPP applications in the first few months of the pandemic overwhelmed SBA servers and frustrated small business owners across the country who were unable to even submit an application, much less receive funds.[3]  That meant every fraudulent PPP application, including the two Freeman filed, diverted resources from legitimate applications that should have been processed but were delayed or never submitted because the system was overtaxed.

Freeman's choices are particularly unjustified because the government offered him assistance for Special Delivery on April 8, 2020, in the form of a $15,000 EIDL, which did not have to be used for payroll.  But despite his dire circumstances, he did not accept the funds.  And even <u>after</u> he fraudulently obtained $500,000 for Special Delivery, he returned to the well for more and filed a second fraudulent application, using New Jack Trucking to fraudulently obtain $146,000.

Accordingly, while the government concedes that there are mitigating factors in this case, a term of imprisonment is just punishment for the circumstances of the offense.

**Deterrence.**  A term of imprisonment is also necessary to deter Freeman and others from exploiting major disasters and national emergencies.  As discussed above, in

---

[2] *See* Andre Dua et al., "Which small businesses are most vulnerable to COVID-19—and when," McKinsey & Company (June 18, 2020), *available at* https://www.mckinsey.com/featured-insights/americas/which-small-businesses-are-most-vulnerable-to-covid-19-and-when.

[3] *See* Trish Turner, "'Double the number of users' in PPP system as it reopens with more technical issues," ABC News (April 27, 2020), *available at* https://abcnews.go.com/Politics/double-number-users-ppp-system-reopens-technical-issues/story?id=70370289.

United States' Sentencing Memorandum
*United States v. Freeman* / CR23-0008-JLR - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

times of crisis, it is essential that the government be able to quickly assist those who are suffering. And when a person undermines and manipulates those efforts to unjustly enrich himself, there must be significant consequences.

## IV.   CONCLUSION

The Court should sentence Freeman to 18 months of imprisonment and three years of supervised release with standard and special conditions recommended by Probation. The Court should further order restitution in the amount of $426,666.88.

Dated: May 9, 2023

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ Cindy Chang*
CINDY CHANG
SETH WILKINSON
Assistant United States Attorneys
700 Stewart Street, Ste 5220
Seattle, WA 98101
Telephone: (206) 553-7970
Fax: (206) 553-0582
Email: Cindy.Chang@udsoj.gov

United States' Sentencing Memorandum
*United States v. Freeman* / CR23-0008-JLR - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970